CHICAGO, ROCK ISLAND & TEXAS RAILWAY COMPANY V.
J. D. CARROLL.

Decided June 11, 1904.

**1.—Evidence—Opinion—Injury to Cattle During Shipment.**

It was not error to admit opinion evidence as to the transportable condition of cattle shipped by rail, as to the effect upon them and their value, of delay and bad treatment, as to what constituted overloading, and as to what was a reasonable time to transfer them from one carrier to another en route, where the witnesses showed themselves qualified to give opinions as experts on such matters.

**2.—Same.**

It was also competent for witnesses to testify as to the condition, history and shortage of the cattle as placed in a pasture at their destination, as this tended to show the extent of the injury and loss.

**3.—Same—Immaterial Evidence.**

The admission of evidence wholly immaterial and probably irrelevant besides could not reasonably have done any harm.

**4.—Carriers—Restricting Liability—Shipment of Cattle.**

Stipulations in a written contract for the shipment of cattle, restricting the carrier's liability to injuries occurring on its own line do not apply in case of a further shipment beyond the point of destination named in the written contract, and as to which there was an oral contract between the carrier and shipper made before the shipment was begun.

**5.—Charge—Defensive Matters.**

A charge submitting a matter of defense is not subject to objection on the part of the defendants where it submitted the defense just as defendants had alleged it and just as they had, in a special instruction refused by the court, invited the court to submit it.

**6.—Market Value—Cattle Shipment—Point of Destination.**

It was not error for the trial court to refuse to instruct the jury to return a verdict in favor of one of the defendants, the initial carrier, because the evidence failed to show the market value of the cattle at R., the point of destination named in the through bill of lading, but showed their value at M., a point beyond R., where the initial carrier knew the cattle were to be carried on to M., and no objection to the evidence on that ground was made at the time the evidence was offered.

**7.—Carriers—Cattle Shipment—Rough Handling.**

In an action for injuries to cattle during shipment it was not error for the court to refuse a requested charge which in effect instructed the jury that the carrier would not be liable for the rough handling of the cattle if they found this had been done in the usual and customary manner.

**8.—Same—Connecting Carriers—Custom.**

Where the issue was raised by the pleadings it was not error for the court to admit evidence as to the custom among railroads, in cases of through shipment over connecting lines, as to which company should furnish cars "properly cleaned and suitable for shipping."

Appeal from the District Court of Hardeman. Tried below before Hon. S. P. Huff.

*Stanley, Spoonts & Thompson, J. H. Barwise, Jr., N. H. Lassiter,* and *Robert Harrison,* for appellant.

*Cowan & Burney,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—About the 1st of April, 1901, C. A. Yantis made a verbal contract wtih the live stock agent of the

Chicago, Rock Island & Pacific Railway Company for the transportation of a large number of cattle from Childress, Texas, to Rosalia, Kan., the cattle to be delivered to the Fort Worth & Denver City Railway Company at Childress, Texas, to be carried by it to Bowie, Texas, there to be delivered to the Chicago, Rock Island & Texas Railway Company, and to be carried by it and the Chicago, Rock Island & Pacific company to Wichita, Kan., and thence over the Missouri Pacific Railway to Rosalia, Kan. It was agreed that Yantis was to put in his order for the cars to the Fort Worth & Denver company a reasonable time before he expected to ship, and that on receipt of this order the Chicago, Rock Island & Pacific company would furnish cars for the shipment. It was also agreed, at the request of the Chicago, Rock Island & Pacific company, that the cattle should have their destination named in the billing made out by the Fort Worth & Denver company as Medford, Okla., a point on the line of the Chicago, Rock Island & Pacific company, near the south line of Kansas; and it was further agreed by the last named company that it would see that the cattle were carried thence to Rosalia without delay, but that this feature of the contract should be kept a secret by Yantis.

The cattle were shipped in pursuance of this contract the latter part of April, 1901, and on account of delays and rough handling many of them died and many more were injured, in consequence of which the appellee, as the assignee of Yantis, recovered a judgment against the Chicago, Rock Island & Pacific company for $2000, against the Chicago, Rock Island & Texas company for $1000, and against the Fort Worth & Denver City company for $1000, and the last named company recovered a judgment for $450 on its plea against the Chicago, Rock Island & Pacific company, from which judgment said companies have appealed.

The issue made by the pleadings, and the result of the trial, are more fully stated in the brief of the two Rock Island companies in their introductory "statement of the nature and result of suit," to which, however, should be added as facts alleged by the plaintiff below the following: "That in transporting each of said trains of cattle the defendants side-tracked the same a great deal and thereby made it necessary to frequently stop and start the train; that the switching incident to taking off and putting in cars and handling said cattle in connection with dead freight, all had a tendency to jerk the cattle down and worry and injure them. Plaintiff is unable to state the precise items of rough handling, as aforesaid, or the exact times and places that it occurred, because he is not furnished with nor does said Yantis know definitely such facts, but plaintiff alleges that generally there was rough handling of said cattle in the manner stated at Bowie, Texas, and all the way from there to their destination."

The assignments of error are entirely too numerous to be taken up and discussed as presented in the brief. We will endeavor, however, in

stating our conclusions, to cover all the points raised by the assignments.

The application for continuance was properly overruled, because the diligence shown was wholly insufficient, as appears from the statement appended by the judge to the bill of exceptions, which statement is found on pages 18 and 19 of said brief.

The testimony offered by appellee, and admitted over objection, as to the transportable condition of the cattle when they were offered for transportation, and as to the effect upon them and their value of delay and bad treatment received from the railway companies, and as to what constituted overloading, and as to what was a reasonable time to transfer them from one carrier to another at Bowie, and other matters of opinion, was competent; the witnesses having shown themselves qualified to give opinions as experts on such matters, as will be seen from the bills of exception and the judge's explanation in connection therewith, and as will more fully appear from the statement of facts.

It was also competent to prove the condition, history and shortage of the cattle placed in the pasture at Rosalia. This tended to show the extent of the injury and loss.

The testimony as to the freight charged, complained of in the third assignment, was perhaps subject to the objection that it was wholly immaterial, but we are not prepared to say that it was irrelevant, and being wholly immaterial, we are prepared to say that it could not reasonably have done any harm.

As to the testimony offered, and admitted over objection, tending to restrict the scope and effect of the written contracts of shipment executed en route, we need not determine whether the court erred in these rulings, since we are of opinion that the defense of the Rock Island companies, founded upon these written contracts, was not available. While the written contracts executed en route limited the liability of the Rock Island companies to their own lines, they did not purport to cover shipments beyond Medford, but in terms only applied to shipments from Childress to Medford. These contracts were executed in this form in pursuance of a more comprehensive verbal agreement made at Kansas City with the live stock agent of said companies, or at least of the Chicago, Rock Island & Pacific, by the terms of which the cattle were to be carried from Medford to Rosalia and Summit, points on the Missouri Pacific, through the instrumentality of the Rock Island, and without any action on the part of the shipper beyond Medford, a station on the Rock Island road, which was treated in the written contracts as the point of destination. The fact that the real destination of the cattle was Rosalia, Kan., was kept a secret at the instance of said live stock agent, and he undertook, for the company or companies represented by him, to control that part of the shipment as something outside of the written contracts.

The evidence of Moffitt which seems from the twenty-sixth bill of

exceptions to have been excluded, seems from the agreed statement of facts to have been admitted.

We see no abuse of the court's discretion in permitting plaintiff below to introduce in rebuttal the evidence complained of under the twenty-third, twenty-fourth, twenty-fifth and twenty-sixth assignments, tending to prove the allegations of the petition quoted above, which allegations were broad enough, we think, to admit the proof. Hence both propositions under these assignments are overruled.

We find no merit in the assignments complaining of the charges given, and of the court's action in refusing charges. As already seen, the written contracts did not purport to control the shipment beyond Medford, which disposes of the complaints of the charge in that respect. As to the objections to the twelfth paragraph, in that it required the jury to find that the shipper not only overloaded the cars, but that in doing so he was guilty of negligence, it is sufficient to say that the court submitted this defense just as the appellants had alleged it, and just as, in a special instruction refused by the court, they invited the court to submit it. Other objections to the charge are equally untenable.

The four assignments of error submitted in the brief of the Fort Worth & Denver City company are all overruled. The first and second complain of the judgment because the court refused to instruct the jury to return a verdict in its favor on the ground that there was no proof as to the market value of the cattle at any other place than Rosalia, Kan. But the evidence set out in the "reply brief of appellee" tended to show that while Medford was named in the billing as the point of destination, the fact must have been known to the Fort Worth & Denver City company that the cattle were to be carried to Kansas. At all events, it knew that the cattle were to be carried beyond its own line, and when the evidence of the market value at Rosalia was offered it made no objection. Indeed, the court gave a special charge at its request which submitted to the jury the issue as to damages based upon the value of the cattle as proved, and we think it is now too late for it to raise the objection embodied in these assignments.

The third complains of the court's refusal to give a special charge, which was subject to the objection that it in effect instructed the jury that the carrier would not be liable for the rough handling of the cattle if they found this had been done in the usual and customary manner, and to a further objection of the same nature, and in so far as the instruction was correct it was included in the charge given.

Manifestly there is no merit in the fourth assignment.

These conclusions lead to an affirmance of the judgment, so far as appellee is concerned, the evidence being sufficient to warrant the verdict.

As to the controversy between the Fort Worth & Denver City company and the Chicago, Rock Island & Pacific company, we think the evidence warranted a finding that the latter company made a contract with the shipper to furnish the cars in a suitable condition for use, that is, prop-

erly cleaned and disinfected, and that it failed to do this, and that the evidence warranted the court in submitting the issue as to whether it was the fault of the Rock Island company or of the Fort Worth & Denver that the cars were not furnished in suitable condition. There was evidence, however, tending to show that the Fort Worth & Denver City company received the cars in time to have cleaned and disinfected them sooner than it did, and that some of the delay might thus have been avoided.

We are not prepared to hold that the court erred, as complained in the eighth assignment, in allowing proof of the custom among railroads as to which company should furnish cars "properly cleaned and suitable for shipping." The issue was made by the pleadings, and the evidence tended to exculpate the Fort Worth & Denver City company and to throw the blame on the Rock Island company.

On the whole record we conclude that the material allegations made by appellee against all other parties and by the Fort Worth & Denver against the Rock Island company as set out in the first ten pages of the brief for the Rock Island companies were sustained by the evidence, and that the judgment should be in all things affirmed.

*Affirmed.*

Writ of error refused.